Dawn Johnson WHATLEY, Individually and as Executrix of The Estate of Perry Lee Whatley, Deceased, and Michael Easton, Appellants,

v.

Mylus James WALKER, Jr., Jeanie Anderson, and Robert Daniel Whatley, Appellees.

No. 14–06–00970–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 18, 2009.

Rehearing En Banc Overruled Jan. 14, 2010.

Peter J. Riga, Michael Easton, Houston, TX, for appellants.

Mylus James Walker Jr., pro se.

Kevin F. Risley, Houston, TX, Roy L. Fuller, Baytown, TX, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and BROWN.

## OPINION

ADELE HEDGES, Chief Justice.

This is an appeal from the probate court's final order appointing a guardian over the person and estate of Perry Lee Whatley ("Perry"). Perry died after the probate court signed the final order at issue in this appeal, and his widow, Dawn Johnson Whatley ("Dawn"), individually and as the executrix of Perry's estate, now challenges that final appointment order. Dawn raises four procedural issues challenging the probate court's jurisdiction to sign the final order of appointment. Appellee, Michael Easton ("Easton"), who claims to be an assignee of certain claims not before this Court, challenges a show-cause order signed by the probate court against him. We affirm.

## I. BACKGROUND

This case has a complex and lengthy history. There have been multiple mandamus proceedings and a direct appeal from prior orders signed by the probate court.[1] We discuss only the portion of the case history that is relevant to the issues before us.

On April 15, 2005, Jeanie Anderson ("Jeanie") and Robert Daniel Whatley ("Robert") initiated this guardianship proceeding under Section 682 of the Texas Probate Code, seeking a guardianship over the person and estate of their 82 year-old uncle, Perry. On May 10, 2005, Perry and Dawn, his wife of four months, filed responses opposing the application and requesting in the alternative the appointment of Dawn as Perry's guardian. Beginning in August 2005, Dawn began a series of motions to recuse and disqualify the probate court judge, Michael Wood, as well as the administrative judge, Guy Herman. Initially, Dawn filed motions against Judge Wood on August 3, 2005 (amended on August 8, 2005), September 9, 2005, and September 12, 2005. The case was also removed to federal court several times and remanded back to the probate court.

On September 29, 2005, Judge Wood appointed appellee, Mylus James Walker, Jr. ("Walker"), as the temporary guardian over the person and estate of Perry. On October 13, 2005, Judge Wood signed an order reaffirming the appointment of

---

1. Additionally, the parties in this case have filed other litigation against each other in both state and federal court, some of which are still pending. Those related causes have been assigned different cause numbers. *See In re Easton*, Nos. 01–07–00488–CV, 01–07–00490–CV, 2007 WL 1953883 (Tex.App.-Houston [1st Dist.] July 6, 2007, orig. proceeding) (mem. op.); *In re Norman*, 14–06–00488–CV, 2006 WL 2947845 (Tex.App.-Houston [14th Dist.] Oct. 13, 2006, orig. proceeding) (mem. op.); *In re Whatley*, 14–06–00843–CV, 2006 WL 2882789 (Tex.App.-Houston [14th Dist.] Oct. 12, 2006, orig. proceeding) (mem. op.); *In re Whatley*, 14–06–00079–CV, 2006 WL 2771879 (Tex.App.-Houston [14th Dist.] Sept. 28, 2006, no pet.) (mem. op.); *In re Whatley*, 14–06–00699–CV, 2006 WL 2689701 (Tex.App.-Houston [14th Dist.] Sept. 21, 2006, orig. proceeding) (mem. op.); *In re Easton*, 203 S.W.3d 438 (Tex.App.-

Houston [14th Dist.] 2006, orig. proceeding); *In re Whatley*, No. 14–05–01222–CV, 2006 WL 2257399 (Tex.App.-Houston [14th Dist.] Aug. 8, 2006, orig. proceeding) (supp. mem. op. on reh'g.); *In re Whatley*, 14–05–01222–CV, 2006 WL 1490161 (Tex.App.-Houston [14th Dist.] June 1, 2006, orig. proceeding) (mem. op.), *withdrawn and superceded by*, *In re Whatley*, No. 14–05–01222–CV, 2006 WL 2948230 (Tex.App.-Houston [14th Dist.] Oct. 13, 2006, orig. proceeding) (mem. op.); *In re Whatley*, No. 14–05–00826–CV, 2005 WL 3005730 (Tex.App.-Houston [14th Dist.] Nov. 10, 2005, orig. proceeding) (mem. op.).

Because these related causes do not impact our disposition, we do not address the issues raised in those causes. The instant appeal involves only the guardianship orders specifically challenged in the notice of appeal under cause no. 355,095.

Walker as Perry's temporary guardian. On December 12, 2005, Dawn filed a petition for writ of mandamus with this court challenging Judge Wood's September and October 2005 orders (collectively "temporary guardianship orders"). Two days later, on December 14, 2005, Judge Wood signed a final order appointing Walker as the permanent guardian of Perry's estate and Jeanie permanent guardian over Perry's person ("permanent guardianship order"). Dawn and Perry filed a direct appeal attacking the permanent guardianship order.

On June 1, 2006, this court granted mandamus relief on Dawn's December 12, 2005 petition for writ of mandamus.[2] In the mandamus proceeding, this court reviewed the temporary guardianship orders as well as the permanent guardianship order. We concluded that Judge Wood erroneously signed all three orders while a motion to recuse Judge Wood was pending. We further concluded that the September 29, 2005 temporary guardianship order was signed after the case had been removed to federal court. Accordingly, we declared all three appointment orders void.[3] On

June 6, 2006, five days after we issued our mandamus opinion on the appointment orders, Judge Gladys Burwell, the judge assigned to hear the pending motion to recuse Judge Wood, denied the September 9, 2005 recusal motion.[4] On September 28, 2006, the direct appeal challenging the permanent guardianship order was dismissed in light of our mandamus opinion declaring the order void. *See In re Whatley*, No. 14–05–1222–CV, 2006 WL 2948230 (Tex. App.-Houston [14th Dist.] Oct. 13, 2006, orig. proceeding).

Judge Wood set the case for a final hearing and notified the parties of the hearing date, which was set for October 16, 2006.[5] As scheduled, Judge Wood conducted the final hearing on October 16, 2006. Neither Dawn nor Perry, nor their counsel, appeared at this hearing.[6] After considering the evidence, Judge Wood signed an order finding Perry incapacitated and appointing Jeanie the permanent guardian of Perry's person and Walker the permanent guardian of Perry's estate. Jeanie timely filed a motion to modify the final appointment order to include a finding, pursuant to Texas Rule of Civil Proce-

---

**2.** *See In re Whatley*, 2006 WL 1490161. This opinion was supplemented and later withdrawn and superceded by our October 13, 2006 memorandum opinion nunc pro tunc. *See In re Whatley*, 2006 WL 2948230.

**3.** In our memorandum opinion nunc pro tunc that superseded the June 2006 memorandum opinion, we affirmed once more that the appointment orders were void, concluding that "the orders signed by Judge Wood on September 29, 2005, October 13, 2005, and December 14, 2005, are void. Additionally, the September 29, 2005, order issued by Judge Wood is void because Judge Wood had no jurisdiction to enter it while the case was removed to federal court." *Whatley*, 2006 WL 2948230, at *4.

**4.** In light of Judge Burwell's ruling, Walker and Ray Black, attorney ad litem for Perry, filed motions for rehearing in the mandamus proceeding. The rehearing motions were de-

nied, and we issued a supplemental opinion confirming that Judge Wood had erroneously signed the appointment orders while a recusal motion remained pending. Shortly after we issued our opinion, Dawn filed another motion to disqualify Judge Wood. Dawn also filed a motion to disqualify Judge Herman on July 21, 2006, and Easton filed a motion to disqualify Judge Herman on April 27, 2006. On August 13, 2006, Dawn filed another motion to disqualify Judge Wood.

**5.** On October 13, 2006, this Court issued its mandate in the direct appeal so that the hearing scheduled for October 16, 2006 could go forward.

**6.** The attorney ad litem served the order setting the hearing on counsel for Perry and Dawn.

dure 18a, that good cause existed to proceed with trial even if a motion to recuse remained pending. On January 11, 2007, the trial court signed a modified appointment order that included a "good cause" finding ("final appointment order"). Perry, Dawn, and Easton filed a notice of appeal challenging, among other orders, the final appointment order.

On January 16, 2007, Perry, Dawn, and Easton filed an amended notice of appeal and a motion for new trial, which included another motion to recuse Judge Wood. On February 14, 2007, Perry died, and Dawn, thereafter, filed a second amended notice of appeal, removing Perry as an appellant and adding Dawn, individually and as executrix of Perry's Estate, as an appellant.[7] Dawn then either joined or filed two additional motions to recuse Judge Wood, on April 19, 2007 and November 17, 2007.[8] On February 5, 2008, Judge Olen Underwood signed an order recusing Judge Wood from the case. The crux of this appeal involves the propriety of Judge Wood's final appointment order signed January 11, 2007 and other orders signed prior to his recusal.

## II. ISSUES PRESENTED[9]

Dawn does not challenge the probate court's finding that Perry was incapacitated or its selection of the guardian. Instead, Dawn brings three procedural issues challenging the probate court's authority to sign the final appointment or-

der. Dawn states the following three issues on appeal:

1. Did the Probate Court ever acquire jurisdiction over the person and the estate of Perry Lee Whatley which allowed it to appoint a temporary, and then permanent, guardian?

2. Could a disqualified trial judge in exercising "discretion" enter a new judgment one working day after he reacquired jurisdiction, as the case was in the Court of appeals until October 13, 2006?

3. Could a visiting Judge overrule his own motion to recuse and disqualify and then enter orders and judgments from outside the County seat?

Easton has challenged a show-cause order signed by Judge Wood addressing emails allegedly sent by Easton and states the following as his issue for this appeal:

Can a trial judge be a witness, an accuser, a prosecutor, and the fact-finder in a case of criminal contempt; then, after admitting that the person he is personally accusing of the contempt was not served with a show cause order, can that judge issue a writ of attachment commanding the arrest of the accused without bond—in violation of both the State and the Federal Constitutions—and while the judge is laboring under constitutional disqualification?

## III. ANALYSIS[10]

■ In her first issue, Dawn challenges the probate court's jurisdiction to sign the

---

7. In the Second Amended Notice of Appeal, Dawn is listed individually and as executrix of Perry's estate, and Perry is no longer listed as a party.

8. The recusal motions that were filed after the final appointment order were amended or supplemented on January 4, 2008, January 8, 2008, and January 27, 2008.

9. Dawn and Easton jointly raise four issues in their brief. However, as explained in detail below, only Dawn has standing and an interest in issues one through three, while only Easton has standing to raise the fourth issue.

10. We note that, due to the death of Perry, any appeal of the order appointing a permanent guardianship over his person has become moot. *Zipp v. Wuemling*, 218 S.W.3d

final order of appointment and any other orders by claiming that Perry, Dawn, Walker, and Black were not properly served.

### A. Service of Process

■ Before a court may enter judgment against a party, the court must have obtained jurisdiction over that party pursuant to applicable rules or statutes. *See* Tex.R. Civ. P. 124; *Ross v. Nat'l Center for the Employment of the Disabled,* 197 S.W.3d 795, 796–97 (Tex.2006); *Vance v. Davidson,* 903 S.W.2d 863, 866 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding). A trial court's jurisdiction is a question of law an appellate court reviews *de novo* by examining the pleadings and any other evidence relevant to the determination. *In re Erickson,* 208 S.W.3d 737, 740 (Tex.App.-Texarkana 2006, no pet.). In general, jurisdiction over a party is acquired by voluntary appearance, service of process as provided by law, or waiver of service. *See* Tex.R. Civ. P. 124 ("In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant, as prescribed in these rules, except where otherwise expressly provided by law or these rules."); *Werner v. Colwell,* 909 S.W.2d 866, 869–70 (Tex.1995).

■ In addition to the civil service of process requirements articulated under the civil procedure rules, the Probate Code prescribes further service requirements specific to guardianship proceedings. Specifically, Section 633 of the Probate Code provides in relevant part:

(a) On the filing of an application for guardianship, notice shall be issued and served as provided by this section.

. . .

(c) The sheriff or other officer shall personally serve citation to appear and answer the application for guardianship on:

(1) a proposed ward who is 12 years of age or older;

. . .

(3) any court-appointed conservator or person having control of the care and welfare of the proposed ward;

(4) a proposed ward's spouse if the whereabouts of the spouse are known or can be reasonably ascertained; and

(5) the person named in the application to be appointed guardian, if that person is not the applicant.

Tex. Prob.Code § 633(a), (c). Failure to serve the proposed ward with citation is jurisdictional, and a court's subsequent order appointing a guardian without proper service on the ward is void. *See In re Erickson,* 208 S.W.3d at 740 ("only through compliance with Section 633 of the Texas Probate Code is the trial court's jurisdiction invoked"). The Code further provides that a person *other than the proposed ward* may waive receipt of notice or the issuance and personal service of citation. Section 633(e) provides:

A person other than the proposed ward who is entitled to receive notice or personal service of citation under Subsections (c) and (d) of this section may choose, in person or by attorney ad li-

---

71, 74 (Tex.2007). Because there is a continuing dispute over who should settle the estate, however, Perry's death does not moot the issue of the guardianship of his estate. *Id.*

Accordingly, we dismiss the issues and arguments relevant to guardianship over the person of Perry.

tem, by writing filed with the clerk, to waive the receipt of notice or the issuance and personal service of citation. Tex. Prob.Code § 633(e). The Probate Code prohibits waiver of service by the proposed ward, but permits waiver of citation by other persons entitled to service of process. *See id.*

 Dawn argues that the probate court never invoked jurisdiction over herself, Perry, Ray Black, or Walker because they were not properly served. With respect to Perry, the record reflects that after several attempts to locate him, he was personally served with citation by a constable on September 20, 2005 in a Massachusetts hospital. Likewise, the record before us reflects that Dawn was personally served with citation by a constable on May 11, 2005. Thus, the probate court's jurisdiction over Perry and his estate was properly invoked.

 Moreover, Black, the attorney ad litem, was not required to be served because he did not fall within the list of those upon whom citation must be served. *See* Tex. Prob.Code Ann. § 633(c)(1)-(5). Likewise, Walker was not required to be served because he was not "the person named in the application to be appointed guardian." Tex. Prob.Code Ann. § 633(c)(4), (5). Even if Black and Walker were required to be served, however, both Black and Walker filed multiple pleadings with, and personally appeared before, the probate court without objecting to any lack of service of citation. A general appearance in the case is a waiver of service of process. *See* Tex.R. Civ. P. 121 (stating that an answer shall constitute an appearance "so as to dispense with the necessity for the issuance or service of citation"); *Adcock v. Sherling*, 923 S.W.2d 74, 79 (Tex.App.-San Antonio 1996, no pet.). The lower court, therefore, had jurisdiction to hold the guardianship hearing.

### B. "Second" Guardianship Proceeding

Although her briefing is not entirely clear, Dawn appears to additionally argue that the probate court lacked jurisdiction over the parties in this case because our opinion voiding the temporary guardianship orders and permanent guardianship order of December 14, 2005 terminated the guardianship proceeding that was originally filed on April 15, 2005 and in turn, created a second guardianship proceeding requiring service of process, once again, on Perry, Dawn, Black, and Walker. To support this particular argument, Dawn relies on a letter dated October 19, 2006 and statements made by Judge Wood at the August and October 2006 hearings.

On October 19, 2006, Judge Wood sent a letter to this Court notifying us that he was in receipt of our mandamus opinion, and states in relevant part:

All parties have given full effect to the June 1, 2006 Order. The guardianship terminated that day. Neither the guardian nor the attorney ad litem for the ward have seen him since that day; the ward's present whereabouts and condition are unknown.

 Dawn also points to statements made by Judge Wood at the August and October 2006 hearings that the case was a "new guardianship proceeding." We do not interpret either statement to mean that the entire proceeding was terminated or that the application for a guardianship had been dismissed. Instead, Judge Wood indicated that the guardianship *appointments* had been terminated. The probate court's statements in the letter simply reassured this Court that the probate court was in compliance with our ruling set forth in the mandamus opinion. Additionally, neither a nonsuit nor other order to terminate or remove the cause from the lower

court's docket was signed, and the proceeding maintained the same cause number, 355,095.

Accordingly, the probate court had jurisdiction over Perry, Dawn, Black, and Walker in cause number 355,095, the only guardianship proceeding before the lower court.[11] We overrule Dawn's first issue.

### C. Ruling on the Motion to Recuse While The Direct Appeal Was Pending

In her second issue, Dawn challenges Judge Burwell's authority to rule on the September 9, 2005 motion to recuse Judge Wood on the following bases: (1) Judge Burwell lacked authority to deny the motion to recuse while the direct appeal remained pending with this Court; (2) there was not an order of assignment authorizing Judge Burwell to rule on the motion; (3) Judge Burwell acknowledged in an affidavit that her involvement in the case terminated on November 3, 2005; and (4) Judge Burwell erroneously signed the recusal order outside of the county seat.

#### 1. The Pending Appeal

Dawn is correct that there was a direct appeal filed from the probate court's December 14, 2005 order appointing a guardian. In dismissing that appeal, this Court held that we lacked jurisdiction over the appeal because the December 14, 2005 order was declared void in our prior mandamus proceeding. *In re Guardianship of Whatley*, No. 14–06–0079–CV, 2006 WL 2771879 (Tex.App.-Houston [14th Dist.]. Sept. 28, 2006, no pet.) (mem. op.). Dawn relies on the general rule that once an

appeal is perfected, an appellate court, with certain exceptions, has exclusive jurisdiction over the cause. *See, e.g., Saudi v. Brieven,* 176 S.W.3d 108, 113–14 (Tex. App.-Houston [1st Dist.] 2004, pet. denied). However, the cases on which Dawn relies do not support the proposition that a trial court has no authority to continue probate proceedings while a voided order is appealed in a separate appeal. These cases are not on point, and under our set of facts, do not mandate that a probate court's authority is so restricted.

In a proceeding governed by the Texas Probate Code, there are often multiple phases and stages of the case that must be resolved. This fact has often made it difficult for courts and parties to determine when a final order has been entered that can be appealed. *See DeAyala v. Mackie,* 193 S.W.3d 575, 578 (Tex.2006) (noting justification for allowing review of intermediate decisions in probate case so that error does not harm later phases of proceeding). In a guardianship case, in particular, there are multiple stages to the proceeding, and the appointed guardian and probate court have continuing duties even after an appeal is filed. *See, e.g.,* Tex. Prob.Code § 655 (pending appeal from order appointing a guardian, appointee shall continue to act as guardian and shall continue prosecution of pending suit in favor of guardianship); Tex. Prob.Code § 671(a), (b) (judge has duty to examine, at least annually, well-being of ward); Tex. Prob.Code § 672 (court must review annually whether guardianship should be continued, modified, or terminated).

---

11. Without citing relevant authority, Dawn insists that the mandamus proceeding voided any order by the probate court from September 9, 2005 forward. Such statement misrepresents our mandamus opinion. We held that the mandamus proceeding resulted in the declaration that three orders of the probate court, the temporary appointment order, the order reaffirming the temporary appointment, and the permanent appointment order, were void. *In re Whatley,* 2006 WL 2948230, at *4. This Court did not declare all subsequent orders in the proceeding void.

■ The facts of this case are similar to those in *Mellinger v. Nicholson*, 142 S.W.2d 307 (Tex.Civ.App.-Galveston 1940, writ dism'd judgm't cor.). In *Mellinger,* the county court sitting in probate appointed an administrator of the estate of the deceased. 142 S.W.2d at 307. The administrator later filed an application to resign. *Id.* at 307–08. The county court accepted the resignation, approved the administrator's final accounting, and ordered the estate turned over to another individual. *Id.* at 308. Certain parties interested in the estate appealed the county court's order to the district court. *Id.* While the appeal was pending, the county court appointed a successor administrator, who later resigned, and then appointed another temporary and permanent administrator. *Id.* On appeal, the question before the court was whether the lower court had the "authority, power, and jurisdiction" to appoint the successor administrator. *Id.* at 309. The court found that it did because, *inter alia,* the appeal did not involve the validity of the resignation of the prior administrator but only the acceptance of the final account and his discharge from liability. *Id.* In other words, the lower court could continue its probate court duties because the appeal did not involve those actions.

Likewise, Judge Burwell could rule on the September 9, 2005 motion to recuse notwithstanding the existence of the direct appeal. The direct appeal did not involve the September 9, 2005 motion to recuse on which Judge Burwell ruled. The direct appeal involved a claim by Dawn that the probate court had no jurisdiction over the person and estate of Perry because of an alleged lack of personal service of citation. We hold that, under the unique facts of this case, Judge Burwell could rule on the September 9, 2005 motion. *See id.*

2. *Order of Assignment to Judge Burwell and Her Affidavit.*

Contrary to Dawn's argument, Judge Burwell acted pursuant to a valid order of assignment. Shortly after the September 9, 2005 motion to recuse was filed, Judge Steve King, Presiding Judge of the Statutory Probate Courts of Texas, issued a Minute Order assigning Judge Burwell to hear the September 9, 2005 motion. The order of assignment expressly states:

IT IS THEREFORE ORDERED that the HONORABLE GLADYS B. BURWELL, Statutory Probate Judge of the Probate Court of Galveston County, Texas, is hereby assigned to hear [Perry Lee Whatley and Dawn Johnson Whatley's Motion to Disqualify/Recuse The Honorable Mike Wood] in the above-referenced and numbered cause with all rights, powers and privileges held by the regular judge of the court assigned.

The order does not impose a deadline or time limit for Judge Burwell to rule on the motion to recuse. The order remained in force at the time Judge Burwell ruled on the September 9, 2005 motion. Therefore, there was a valid order of assignment authorizing Judge Burwell to rule on the recusal motion.

Dawn, however, does not acknowledge Judge King's order of assignment, but relies on an affidavit filed by Judge Burwell on March 1, 2006, which states that she was appointed on September 9, 2005 and September 12, 2005 to preside over a motion to recuse and that she ruled on November 2, 2005. Although Judge Burwell thought, at the time this affidavit was drafted, that she had completed her rulings, our court issued an opinion in the mandamus proceeding finding that she had ruled only on the September 12, 2005 motion. After our opinion issued, Judge Burwell ruled on the September 9, 2005 motion. The affidavit of Judge Burwell does not establish that her appointment to hear the September 9, 2005 motion had lapsed;

it establishes only that she was mistaken as to whether both motions had been ruled upon. Her subsequent ruling on the September 9, 2005 motion acknowledges this fact and was permitted by the Minute Order appointing her to hear the motion.

### 3. *Signing the Order in Clear Lake*

■ Finally, Dawn argues that Judge Burwell's order denying the September 9, 2005 motion was not effective because the order reflects that she signed the order in Clear Lake City, Texas, outside the county seat. This argument is also without merit. Because the record reflects that Judge Burwell did not conduct any proceedings outside of the county seat, her order is not void.

In *Mellon Service Co. v. Touche Ross & Co.*, this Court addressed whether a visiting judge assigned to hear a case in Harris County, Texas could hear oral argument on a motion for summary judgment in Galveston County, Texas consistent with article V, § 7 of the Texas Constitution. 946 S.W.2d 862, 863 (Tex.App.-Houston [14th Dist.] 1997, no writ). We held that a summary judgment hearing met the definition of a proceeding for purposes of article V, § 7 and thus had to be conducted in the county seat. *Id.* at 869. However, in *Burns v. Bishop,* we clarified what acts constitute article V, § 7 proceedings that must be heard in the county seat. 48 S.W.3d 459, 464 (Tex.App.-Houston [14th Dist.] 2001, no pet.). We explained that not every act taken or thought pondered by a visiting or assigned judge must be carried out in the county seat. *Id.* "We do not believe *Mellon* means to include mental processes of judges in its interpretation of 'proceedings.'" *Id.* Nor does it include the task of signing orders on motions. *Id.* at 465. "Appellants's interpretation of 'proceedings' would require the State of Texas to pay judges to travel from county to county merely to sign their names or to

review copies that could be delivered, faxed, or e-mailed." *Id.* The record reflects that Judge Burwell signed an order denying the motion from Clear Lake City. Judge Burwell was not required to be at the county seat at the time she signed the order denying the September 9, 2005 motion to recuse. *See id.*

Judge Burwell had the authority to rule on the September 9, 2005 motion to recuse. She denied that motion on June 6, 2006. We overrule Dawn's second issue.

### D. Judge Herman's Rulings On His Motions to Recuse and Disqualify

In her third issue, Dawn argues that Judge Guy Herman erred when he ruled on the motion to disqualify filed against him by Dawn and the motion to recuse filed by Easton. Dawn further contends, without explanation, that the error is dispositive of the appeal.

### 1. *Dawn's Motion to Disqualify Judge Herman*

Dawn filed a motion to disqualify Judge Herman in his capacity as an individual judge and as the administrative judge on July 21, 2006. Judge Herman dismissed the motion on July 27, 2006 on the basis that the motion was procedurally defective. Judge Herman determined that the motion was untimely filed and that there was no statutory authority to disqualify the Presiding Judge of the Statutory Probate Courts in his administrative capacity.

This Court recently addressed a similar issue in *Guilbot v. Estate of Vallejo,* 267 S.W.3d 556 (Tex.App.-Houston [14th Dist.] 2008, pet. filed). *Guilbot* also involved an order of Judge Herman ruling on his own motion to recuse. *Id.* at 559. We stated, "Texas law is clear that, when faced with a motion to recuse, a judge has only two options: grant the motion to recuse or refer the motion to another judge for a

ruling." *Id.* at 561. When Judge Herman ruled on his own motion to recuse, he erred and should have instead referred the motion to the Chief Justice of the Texas Supreme Court. *Id.* (citing Tex. Gov't Code Ann. § 74.057(a) and Tex.R. Civ. P. 18a(g)). Likewise, Judge Herman erroneously ruled on the motion to disqualify and should have referred the motion to the Chief Justice of the Texas Supreme Court. *Id.* Following our decision in *Guilbot,* we conclude that Judge Herman erred in ruling on Dawn's motion to disqualify him. Finding Judge Herman's ruling to be error, we must now determine if such error requires reversing this appeal. *See id.* at 562–63.

### 2. *Judge Herman's Error*

The August 3, 2005, September 9, 2005, and September 12, 2005 motions were all disposed of prior to the final order at issue in this appeal.[12] Our review of the record shows that, once any orders signed by Judge Herman after the motion to disqualify him was filed are declared void, there remained pending at the time of the final order signed by Judge Wood the following: (1) a motion to disqualify Judge Wood filed by Dawn on June 6, 2006; and (2) a motion to recuse and disqualify Judge Wood filed by Easton on September 17, 2006. Both motions are tertiary and did not prevent Judge Wood from signing the final order.[13]

Section 30.016 of the Texas Civil Practice and Remedies Code provides that a trial court may continue to dispose of a case even after a motion to recuse is filed, if the motion is a tertiary motion. The version of Section 30.016 in effect at the time the final order in this case was signed, titled Recusal or Disqualification of Certain Judges, provided in pertinent part as follows:

 (a) In this section, "tertiary recusal motion" means a third or subsequent motion for recusal or disqualification filed against a district court, statutory probate court, or statutory county court judge by the same party in a case.

 (b) A judge who declines recusal after a tertiary recusal motion is filed shall comply with applicable rules for procedure for recusal and disqualification except that the judge shall continue to:

 (1) preside over the case;

 (2) sign orders in the case; and

 (3) move the case to final disposition as though a tertiary recusal motion had not been filed.

Tex. Civ. Prac. & Rem.Code § 30.016.[14] The June 6, 2006 motion to disqualify Judge Wood was the fourth motion filed by Dawn against Judge Wood. It thus satisfies the definition of a tertiary recusal motion and did not prevent Judge Wood from moving the case to "final disposition as though a tertiary recusal motion had not been filed." *Id.*

Furthermore, Judge Wood modified his order to reflect the good cause required

---

**12.** Motions to recuse were also filed against Gladys Burwell and Russell Austin, the judges assigned to hear some of the recusal motions. The motions to recuse Judge Burwell and Judge Austin are not at issue in this appeal.

**13.** Dawn claims in her motion to dismiss her own appeal that there were five recusal motions pending at the time Judge Wood signed the October 16, 2006 order appointing permanent guardian. Dawn is incorrect. The record shows that only the two motions cited were pending. There were several motions filed *after* the final order in this case was signed; of course, any post-order motions could not prevent the judge from signing the final order.

**14.** Section 30.016 was amended after Perry's guardianship proceeding was filed. We, refer to the version of Section 30.016 in effect at the time of filing.

under Texas Rule of Civil Procedure 18a for proceeding with a ruling when a motion to recuse is pending. Rule 18a(d) provides that, where a judge declines to recuse himself, he must refer the motion to recuse and, except for good cause stated in the order in which further action is taken, shall make no further orders and take no further action in the case. Tex.R. Civ. P. 18a(d). Judge Wood modified his final order of appointment to reflect the necessary good cause finding.

We acknowledge that Section 30.016(e) provides that if a tertiary recusal motion is finally sustained, the new judge for the case shall vacate all orders signed by the sitting judge during the pendency of the tertiary recusal motion. Tex. Civ. Prac. & Rem.Code Ann. § 30.016(e). We also recognize that Judge Olen Underwood did ultimately recuse Judge Wood on February 5, 2008 while this case was on appeal. Dawn and Easton filed a motion to dismiss the current appeal on the basis of Judge Underwood's order of recusal, claiming that the order rendered void (and thus not appealable) any order signed by Judge Wood. We disagree. Judge Underwood's recusal order states that he was ruling on the "Motion to Recuse" filed pursuant to Rule 18a. The only pending motions to recuse Judge Wood at the time Judge Underwood ruled were motions filed after the final order was signed. The final order appealed from in this case was not signed during the pendency of the recusal motion that was ultimately sustained. Thus, the final order does not have to be vacated under Section 30.016(e).

3. *Easton's Recusal Motion*

Easton filed a motion to recuse Judge Herman on April 27, 2006. Easton, however, had no standing to file a motion to recuse any judge in the guardianship proceeding. Thus, his motion to recuse

was ineffective, and Judge Herman was not required to rule on that motion.

Texas Rule of Civil Procedure 18a provides that *a party* may file a motion to recuse. Tex.R. Civ. P. 18a(a). The First Court of Appeals has recently held that, under Rule 18a, a motion to recuse filed by a non-party does not satisfy Rule 18a and thus need not be referred before proceeding with the case. *Bell v. State,* No. 01–05–1180–CR, 2006 WL 3628916, at *6 (Tex. App.-Houston [1st Dist.] Dec. 14, 2006, no pet.) (mem. op.). We agree with the *Bell* court's reasoning and hold that a motion to recuse filed by a person with no justiciable interest in the case is not effective and does not have to be ruled upon or referred before a court may continue with the case.

Easton claims to have an assignment from Dawn of certain of her claims. We do not rule on the validity of this assignment as it has not been raised as an issue in this appeal. We do find, however, that, notwithstanding any assignment of certain claims, Easton does not have a justiciable interest in the guardianship proceeding and thus is not considered a party for purposes of a Rule 18a motion to recuse. On February 17, 2006, Easton stated in open court, "I don't have an interest in Mr. Whatley's guardianship." At another hearing on March 2, 2006, the following exchange occurred:

Court: Now, saying that, I wonder what it is that you think you can have assigned to you. Do you think you can have a contest assigned to you?

Easton: No, sir.

Court: So, you're not here on a contest?

Easton: No, sir.

These statements reflect Easton's own admissions that he has no justiciable interest in the guardianship proceeding. The guardianship proceeding is the only claim at issue in this appeal. Any motion to

recuse filed by Easton against Judge Herman or Judge Wood with respect to the guardianship proceeding was, therefore, ineffective. *See* Tex.R. Civ. P. 18a; *Bell,* 2006 WL 3628916, at *6.

 Easton additionally claims that his standing in this case cannot be challenged because no one filed a verified denial of capacity under Texas Rule of Civil Procedure 93. Easton is correct that the record does not reflect a challenge to capacity under Rule 93. Easton's right to file a motion to recuse, however, is predicated on the existence of a justiciable interest in the case. Whether Easton had the capacity to sue is not the issue. The question of whether a party has a justiciable interest in a case is a question of standing that can be raised at any time, even on appeal. *See Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 849 (Tex.2005). To have standing, and thus a justiciable interest in a case, there must be: "(1) a real controversy between the parties," that (2) "will be actually determined by the judicial declaration sought." *Id.* Easton has no standing in the case because there is no real controversy between him and Walker with respect to the guardianship over Perry that will be determined in the guardianship proceeding. Because Easton has no justiciable interest in the guardianship proceeding, his motions to recuse in that proceeding are ineffective.

Although we agree Judge Herman erred when he ruled on his own recusal motion, we find that the error is not reversible. Accordingly, we overrule Dawn's third issue.

### E. Easton's Challenge to the Show-cause Order

 In issue four, Easton challenges the probate court's show-cause order and accompanying writ of attachment issued against him. In the argument section of his brief, Easton includes many statements and allegations that do not pertain to the show-cause order, thus making it difficult to discern the exact bases of Easton's challenge. He does, however, complain that there were pending motions to recuse Judge Wood at the time that Judge Wood issued the show-cause order. He also complains that the show-cause order was not personally served on him before the arrest warrant was issued, thus making it void. We hold that the probate court's show-cause order was not void based on any motions to recuse and that Easton has no right to relief because he has never been held in contempt and has suffered no adverse ruling. Moreover, Easton will suffer no adverse ruling because the writ of attachment has expired. We, therefore, overrule Easton's issue.

#### 1. The show-cause order and writ of attachment

On February 7, 2006, Judge Wood issued an order with the following:

> On this day the Court on its own motion orders that all counsel, specifically including Michael Easton, pro se, are to cease and desist using Judge Mike Wood's personal email address. Such action constitutes *ex parte* communication with Judge Wood.

Easton then filed a motion to vacate the order, claiming he had no advance notice, no opportunity for hearing, and he was denied due process. The court held a hearing on the motion to vacate the February 7 order and expressly told Easton in court that sending an email to the judge's personal address would be an ex parte communication and that anyone sending him an email to his personal address would be held in contempt. The very next day, Easton allegedly sent an email to Judge Wood's personal email address. The court then issued a personal citation command-

ing Easton to appear at a show-cause hearing on August 3, 2006. Easton failed to appear, and the trial court then issued a writ of attachment. The sheriff was not able to locate Easton to serve the writ, and it was returned unserved and expired on December 4, 2006.

### 2. *The order was not void*

Easton's challenge to the show-cause order based on any pending motions to recuse Judge Wood was the subject of his previous writ of habeas corpus proceeding in this Court. *In re Easton*, 203 S.W.3d 438 (Tex.App.-Houston [14th Dist.] 2006, orig. proceeding). As we held in *In re Easton*, any pending motions to recuse would not prevent Judge Wood from issuing the show-cause order. Texas Rule of Civil Procedure 18a(d) states that while a recusal motion is pending "the judge shall make no further orders and shall take no further action *in the case.*" Tex.R. Civ. P. 18a(d); *In re Easton*, 203 S.W.3d at 442. By issuing the show-cause order prohibiting ex parte communications, Judge Wood did not take any action in disposing, adjudicating, or resolving any aspect of the guardianship proceeding. *In re Easton*, 203 S.W.3d at 442. Thus, any pending motions to recuse would not have rendered the show-cause order void. *Id.*

Easton relies on *Jamilah v. Bass*, 862 S.W.2d 201 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding) in support of his argument. *Jamilah* is distinguishable. In that case, the trial court issued the show-cause order and set a contempt hearing. *Id.* at 201. After receiving the notice of the contempt hearing, the party filed a motion to recuse the judge from hearing the contempt proceeding. *Id.* at 201–02. The court held that the motion to recuse prevented the trial court from hearing the contempt proceeding. *Id.* at 203. It did not hold that the trial court was prevented from even issuing the show-cause order.

*Id.* Nothing in *Jamilah* prevented Judge Wood from issuing the show-cause order in this case. And, Judge Wood never held a contempt hearing because Easton could not be located. Thus, *Jamilah* provides no support for Easton's claim that the show-cause order could not be issued.

### 3. *Easton's appeal is moot*

Easton also argues that Judge Wood should not have issued the writ of attachment because Easton was not personally served with the show-cause order, citing *Ex parte Briscoe*, 561 S.W.2d 26 (Tex. App.-Houston [1st Dist.] 1977, orig. proceeding) and *In re Aguilera*, 37 S.W.3d 43 (Tex.App.-El Paso 2000, orig. proceeding). These cases hold that a party must be served with a show-cause order, for the court to acquire jurisdiction over the contempt proceeding. These cases, however, do not support Easton's issue on appeal. Because Easton has suffered no injury, and will suffer no injury from the writ of attachment, his issue is moot.

As we held in *In re Easton*, the mere existence of the writ of attachment did not infringe upon Easton's liberty. *In re Easton*, 203 S.W.3d at 441. Judge Wood never held Easton in contempt and never assessed any punishment. At the time we issued *In re Easton*, there was no adverse ruling against Easton from which he could pursue a writ of habeas corpus. *Id.*

There is still no adverse ruling against Easton, nor will there be. The writ of attachment was returned to the court on December 4, 2006 unserved and expired. A writ of attachment that is not served before it expires becomes functus officio, meaning it is without legal force or effect. *See Ex Parte Arapis*, 157 Tex. 627, 306 S.W.2d 884, 885–86 (1957). Any claim Easton may have regarding the writ of attachment is moot. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex.

2005) ("A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome."); *see also Davison v. Lane,* 350 S.W.2d 244, 248 (Tex.Civ.App.-Waco 1961, no writ) (finding that alleged wrongful issuance of writ of attachment against cattle became moot question where cattle owner had suffered no damage). Moreover, any alleged error in issuing the writ of attachment would be harmless; there has been no rendition of an improper judgment against Easton. *See* Tex.R.App. P. 44.1(a)(1) (stating appellate court cannot reverse based on trial court error unless error complained of "probably caused the rendition of an improper judgment."). Because Easton's challenge to the show-cause order is without merit, we overrule his issue.

### F. The Ancillary Appellate Motions are Overruled

The following motions have been filed by Dawn and Easton and remain pending: Appellants' Motion to Strike Exhibits to Appellee's Brief; Appellants' Emergency Motion to Set the Case for Submission and to Render; Appellants' Motion for Sanctions (filed August 1, 2007); Appellants' Motion to Recalendar the Cause and Dismiss the Appeal for Lack of Jurisdiction; Appellants' Motion to Dismiss (filed February 22, 2008); Appellants' Motion for Appointment of a Special Master; and Appellants' Motion for Sanctions and Reply to Appellee's Response to Dismiss Appeal (filed March 12, 2008). The Motion to Strike Exhibits to Appellee's Brief, the Motion to Recalendar the Cause, and the Emergency Motion to Set the Case for Submission and to Render are denied as moot.

Appellants' motions to dismiss the appeal and render judgment in their favor are based on the claim that Judge Under-

wood's order granting recusal of Judge Wood made the final order being appealed void. We overrule Appellants' motions to dismiss the appeal for the reasons set forth earlier in this opinion.

Appellants also filed a request for sanctions, claiming that Walker lied to this Court in his opposition to the motion to dismiss by asserting that appellants did not have record support for their argument. It is true that some of the items Walker claimed were missing from the record are in fact in the record. Walker admitted this fact in his opposition to the request for sanctions, stating that the documents were merely overlooked. After reviewing the record, the Court can attest that the clerk's record in this case is large, voluminous, and convoluted. There are seventeen volumes of clerk's record, most of which are groups of supplemental volumes with indices only in the first volume. Many of the documents necessary for review are attachments, requiring the reader to page through documents that do not seem relevant. It is easy to overlook documents in the record, and we find no basis for imposing sanctions. The motions for sanctions are denied.

Finally, Appellants ask the Court to appoint Retired Chief Justice Paul Murphy as a special master to conduct a hearing into the truth of assertions contained in affidavits filed in response to certain motions on appeal. We deny this request. Our disposition of this appeal is based on the record only. Any alleged misstatements contained in documents outside the appellate record are irrelevant to the issues on appeal. The motion to appoint a special master is denied.

### IV. CONCLUSION

The probate court had jurisdiction over the person and estate of Perry Whatley at the time the final guardianship order was

signed. There were no procedural impediments to the entry of the final order at issue in this appeal. Easton's challenge to the show-cause order and writ of attachment are without merit. We, therefore, overrule appellants' issues and affirm the probate court's order.